BEACH ROBO, INC., ET AL.

V.

CROWN CENTRAL PETROLEUM CORPORATION

Record No. 880047

September 23, 1988

Present: All the Justices

*Carlton F. Bennett (Beverly A. Yeskolski; Bennett & Bennis, P.C.,* on briefs), for appellants.
*F. Bradford Stillman (McGuire, Woods, Battle & Boothe,* on brief), for appellee.
*Amicus Curiae:* Virginia Gasoline & Automobile Repair Association, Inc. (Richard M. Bing; Pearce & Bing, on brief), for appellants.

STEPHENSON, J., delivered the opinion of the Court.

The United States Court of Appeals for the Fourth Circuit entered an order of certification requesting that we exercise our certification jurisdiction, Va. Const. art. VI, § 1; Rule 5:42, and answer three questions of law involving the interpretation and application of the Virginia Petroleum Product Franchise Act (the Act), Code §§ 59.1-21.8 through -21.18:1. By order entered January 27, 1988, we accepted the questions for consideration.

The Act, *inter alia,* prohibits a producer or refiner of petroleum products from operating a retail gasoline outlet within one and one-half miles of a retail outlet operated by a franchised dealer. Code § 59.1-21.16:2(A). The Act's "grandfather" clause states, however, that the prohibition "shall not be applicable to retail outlets operated by producers or refiners on July 1, 1979." Code § 59.1-21.16:2(D).

The first certified question is stated as follows:

Whether the grandfather clause of [the Act] exempts a retail gasoline outlet that was operated by a producer or refiner on July 1, 1979 and subsequently operated by a company that is not a producer or refiner under the Act.

Because we answer the first question in the affirmative, answers to the second and third question are unnecessary.

Beach Robo, Inc. (Beach Robo) brought this chancery suit in the Circuit Court of the City of Virginia Beach, seeking to enjoin Crown Central Petroleum Corporation (Crown) from opening a retail gasoline outlet, allegedly in violation of the Act. The suit was removed to the United States District Court for the Eastern

District of Virginia, based upon diversity jurisdiction, 28 U.S.C. § 1446. Following removal, Hilltop Shell, Inc. (Hilltop) was permitted to intervene as an additional party plaintiff.

The district court, upon stipulated facts, ruled that Crown's retail outlet was exempted from application of the Act by the grandfather clause and entered judgment in Crown's favor. Beach Robo and Hilltop appealed to the Court of Appeals for the Fourth Circuit, and the order of certification followed.[1]

The essential facts are undisputed. Beach Robo owns and operates a gasoline station located at 2430 Virginia Beach Boulevard in the City of Virginia Beach (the City). Beach Robo has operated at that location under a franchise agreement continuously since 1977. Hilltop, also a franchisee, has operated a gasoline station at 1928 Laskin Road in the City since 1969.

Crown is a "producer or refiner" of gasoline as defined by the Act. After investing heavily in renovations, Crown was prepared to open a retail gasoline outlet at 2428 Virginia Beach Boulevard on March 31, 1987. Crown's location is less than one and one-half miles from the stations operated by Beach Robo and Hilltop. Crown leases its station from Eastates Petroleum Company, Inc. (Eastates).

On July 1, 1979, Ashland Oil, Inc. (Ashland) was a producer or refiner of petroleum products as defined by the Act. Payless Stations, Inc. (Payless) and Eastates also are producers or refiners under the Act and are wholly-owned subsidiaries of Ashland.

From July 11, 1969, to July 1, 1979, Ashland owned and, through Payless, operated a retail gasoline outlet at the site now leased to Crown. From July 1, 1979, to August 15, 1984, Ashland, through Eastates, continued to operate a retail outlet at the site.

From August 15, 1984, to February 1, 1985, Jarrell Oil Company (Jarrell), under a lease from Eastates (Ashland), operated a retail outlet at the site. Jarrell was not a producer or refiner of petroleum products, but was a "dealer" as defined by the Act. Apparently, because Jarrell went into bankruptcy, the lease reverted to Eastates (Ashland) in February 1985. Thereafter, on or about May 1, 1985, Eastates (Ashland) leased the property to

---

[1] We granted leave to Virginia Gasoline & Automotive Repair Association, Inc., to file an amicus curiae brief.

Crown, but the property has not been open for gasoline retail sales since February 1985.[2]

Beach Robo and Hilltop contend in this Court, as they did in the district court, that the grandfather clause does not exempt a particular location from the Act's prohibition. Rather, they assert, the clause applies to the *operators* of the outlets and the exemption is nontransferable. Beach Robo and Hilltop further contend that even if the exemption applies to the premises, it was extinguished when the property was leased to Jarrell, a nonproducer or refiner.

Crown, on the other hand, contends that the district court correctly ruled that the *premises*, as opposed to the operators, were exempted from the application of the Act. Crown asserts that the clear and unambiguous language of the Act dictates that result.

■ When the language of a statute is clear, unambiguous, and admits of but one construction, rules of statutory construction are not employed. *Ambrogi* v. *Koontz*, 224 Va. 381, 386, 297 S.E.2d 660, 662 (1982); *see Harbor Cruises* v. *Commonwealth*, 217 Va. 458, 460, 230 S.E.2d 248, 250 (1976).

■ The grandfather clause of the Act provides that the Act's prohibition "shall not be applicable to *retail outlets* operated by producers or refiners on July 1, 1979." Code § 59.1-21.16:2(D) (emphasis added). "Retail outlet" is defined in the Act as "the *premises* at which such petroleum products are sold to the general public." Code § 59.1-21.10(f) (emphasis added). "Premises" means "[l]ands and tenements; an estate, including land and buildings thereon; the subject-matter of a conveyance." *Black's Law Dictionary* 1063 (5th ed. 1979).

■ The parties stipulated that the gasoline station leased to Crown was operated as a retail outlet for petroleum products by Eastates, a producer or refiner, on July 1, 1979. Thus, when the language of the Act is given its plain meaning, it is clear that the grandfather clause applies to the *premises* where Eastates sold petroleum products on July 1, 1979. Indeed, the language of the Act is clear and "admits of but one construction." *Harbor Cruises*, 217 Va. at 460, 230 S.E.2d at 250.

---

[2] The district court found that "this hiatus was . . . due to the legal ramifications of the bankruptcy of Jarrell Oil and to the tentative developing plans to widen Virginia Beach Boulevard, and not to any premeditated plan to abandon retail gasoline sales on these premises."

Accordingly, we answer the first and dispositive question in the affirmative.

*The first certified question*
*is answered in the affirmative.*