# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

David H. Jaynes et al.

v.

John B. Haigh et al.

April 9, 1997

Case No. CL95-3242

BY JUDGE A. BONWILL SHOCKLEY

This matter comes before the Court on the parties' cross motions for summary judgment. Both sides have filed lengthy memoranda and a joint stipulation of facts. Oral argument on the motions was heard on March 7, 1997.

*Summary of Facts*

This is an action for declaratory judgment, seeking a determination of whether liability insurance coverage exists under a commercial automobile policy issued by Defendant Michigan Mutual Insurance Company. This action arises from a November 1993 automobile accident. The accident occurred when a Ford pick-up truck driven by Defendant Haigh crossed over the center line of London Bridge Road and collided head-on with a car occupied by four West Virginia University students who were in Virginia Beach for their Thanksgiving break. Two of the students were killed and two critically injured. This action has been brought by the appropriate representatives of the two estates and by the two injured students. As a result of the accident, Defendant Haigh was charged with, and convicted of, two counts of involuntary manslaughter and is now incarcerated. A committee and a guardian *ad litem* have been appointed for him in this proceeding.

The Ford pick-up truck involved in the accident was leased on March 11, 1993, by Defendant Haigh from a Virginia Beach Ford dealership, Beach Ford, Inc. The terms of the two-year lease required the lessee, Haigh, to maintain liability insurance on the truck. The parties agree that Defendant Haigh's insurance had been cancelled due to non-payment approximately two months before the accident.

Simultaneously with the execution of the lease by Defendant Haigh and Beach Ford, the lease was assigned by Beach Ford to Ford Motor Credit Company (hereinafter "Ford Credit"). The terms of the assignment included a transfer of all of Beach Ford's interest in the vehicle to Ford Credit. The Certificate of Title issued by the Virginia Department of Motor Vehicles lists Ford Credit as the owner of the truck. Ford Credit paid the property taxes on the truck. At the end of the two-year lease, possession of the truck was to revert back to Ford Credit.

At the time of the accident, there was in effect a "commercial automobile policy" issued by Defendant Michigan Mutual Insurance Company with Ford Motor Company as the primary named insured. An endorsement to the policy further defined the term "named insured" as "Ford Motor Company, its subsidiary, associated and affiliated companies, and its owned or controlled companies as are now or may thereafter be constituted." Defendant Ford Motor Company has admitted that Ford Credit is a wholly-owned subsidiary. The policy provides for liability coverage in the amount of $12 million, although approximately $11 million of the coverage appears to be self-insured by Ford. Plaintiffs seek a declaratory judgment finding that there is $12 million in coverage available under the aforesaid policy for their claims arising from this accident.

## Appropriateness of Summary Judgment

The Court notes at the outset that summary judgment is appropriate in this case as no material facts remain in dispute. The parties have stipulated to or admitted all relevant facts. The task that remains to be done is to apply the Virginia statutes to the facts as established. It is a function of the Court to determine what the law is and apply it to the particular facts. *See* 17 Michie's Jurisprudence, *Statutes*, § 31 (1994).

### Issues Presented

1. Does the Virginia omnibus statute, Code of Va. § 38.2-2204, require Michigan Mutual to provide liability insurance covering Defendant Haigh to be available to these plaintiffs?

2. If there is liability coverage, is it limited to the mandatory minimum amounts by virtue of the "garage keepers" exception set forth in Code of Va. § 38.2-2205(A)?

### Omnibus Statute Requires Coverage

Code of Va. § 38.2-2204(A) requires that all automobile liability insurance policies issued by insurers licensed in Virginia and insuring vehicles principally garaged in Virginia must provide the same liability coverage for permissive users as is provided for the named insured. Further, Code of Va. § 38.2-2204(D) mandates that any provision included in the policy which purports to limit or reduce the coverage afforded to permissive users is void. This Code section is known as the omnibus statute, and its plain purpose is to require that permissive users receive the same protection as named insureds. *Hardware Mut. Cas. Co. v. General Accident Fire and Life Assurance Corp.*, 212 Va. 780, 784 (1972). It is remedial in nature and should be liberally construed so as to effectuate its stated purpose of providing full coverage to permissive users. *Id.*; *City of Norfolk v. Ingram*, 235 Va. 433, 437 (1988).

The parties do not dispute that Defendant Michigan Mutual is a licensed insurer in Virginia and that the motor vehicle at issue was required by the terms of the lease to be principally garaged in Virginia. Further, there is no dispute that Defendant Ford Motor Credit Company is a named insured under the policy and that Defendant Haigh had permission, or authority, to operate the vehicle by virtue of his lease. There is, however, a clause in the policy which provides: "No coverage is afforded to the lessees of autos unless otherwise provided by endorsement or required by statute or law."

The Court notes that there is no exception in the omnibus statute, excluding permissive users operating a vehicle pursuant to a lease. No case law creating or recognizing such an exception has been located. In fact, the defendants have cited no legal authority for finding that the omnibus statute does not apply in this situation. Defendants rely solely on the provision in the insurance policy which purports to deny coverage to lessees. The Court finds that the exclusion in the policy denying coverage to lessees is void pursuant to Code of Va. § 38.2-2204(D). Further, the Court finds that pursuant to Code of Va. § 38.2-

2204(A), there is liability coverage under the subject policy for Defendant Haigh as a permissive user of the vehicle.

### Amount of Coverage Is Limited

The second issue involves the application of the so-called "garage keepers' exception," found at Code of Va. § 38.2-2205, to the established facts. Defendants argue that this statute limits the liability coverage available to these plaintiffs to the statutory minimum amounts specified in Code of Va. § 46.2-472 ($25,000 per person/$50,000 per accident). The plaintiffs respond that this exception does not apply to Ford Credit because Ford Credit is not in the business of leasing vehicles but instead is in the business of *financing* the leases of vehicles. While at first blush it may appear that this issue involves the determination of disputed facts, which would render summary judgment improper, upon closer review it is clear that none of the underlying facts are in dispute. The only actual dispute involves how the plain words of the statute should be interpreted and applied to the stipulated facts.

The pertinent provisions of § 38.2-2205 are:

A.1. Each policy or contract of bodily injury or property damage liability insurance which provides insurance to a named insured *in connection with the business of selling, leasing, repairing, servicing, storing or parking motor vehicles* against liability arising from the ownership, maintenance, or use of any motor vehicle incident thereto shall contain a provision that the insurance coverage applicable to those motor vehicles shall not be applicable to a person other than a named insured and his employees in the course of their employment if there is any other valid and collectible insurance applicable to the same loss covering the other person under a policy with limits at least equal to the financial responsibility requirements specified in § 46.2-472. *Such provision shall apply to motor vehicles which are* either for the purpose of demonstrating to the other person as a prospective purchaser, or which are loaned or leased to the other person as a convenience during the repairing or servicing of a motor vehicle for the other person, or *leased to the other person for a period of six months or more ....*

3. If there is no valid and collectible insurance available, the coverage under such policy afforded a person, other than the named insured and his employees in the course of their employment, shall be

applicable, but the amount recoverable in such case shall not exceed the financial responsibility requirements specified in § 46.2-472.

[Emphasis added.]

There is no dispute that Defendant Haigh was not an employee of the named insured, Ford Credit. Further, it is undisputed that there is no other valid and collectible liability insurance covering Defendant Haigh. Nor is there any question that the vehicle at issue was leased for a period exceeding six months. It appears clear to the Court that if it is established that the policy at issue provided liability coverage to the named insured, Ford Credit, "in connection with the business of ... leasing," then the only liability coverage applicable to Defendant Haigh is in the statutory minimum amounts of $25,000/$50,000.

Plaintiffs argue that since Ford Credit has repeatedly described itself in various SEC filings as being in the business of financing motor vehicle leases, but not as actually leasing them, then that is determinative of this issue. The Court is of the opinion, however, that regardless of how Ford Credit describes itself, the undisputed fact is that Ford Credit did more than just "finance" the lease of the subject truck. It succeeded to all of the original lessor's (Beach Ford's) interests in the lease and in the vehicle. Further, it is clear from the stipulated and admitted facts that Ford Credit, in addition to financing car loans and engaging in other financial investing, also is involved in the business of leasing motor vehicles to individual consumers under the Red Carpet Lease Program. Under that program, Ford Credit provides the blank lease documents for use by Ford dealerships, approves the leases before the dealerships enter into them, purchases the vehicles, takes assignments of the leases, assumes all of the duties and rights of ownership of the leased vehicles, and performs administrative duties during the term of the leases. Under the terms of the Red Carpet leases, Ford Credit becomes the lessor of the vehicles, not just a financial backer. (In fact, the Court is not particularly clear how a lease can be "financed," since leases do not involve the borrowing of money or the paying of interest, but instead consist only of monthly payments to pay for the right to use the leased property for a specified length of time.) Further, there is no question that the Red Carpet Lease Program is intended to be a profit-making endeavor for Ford Credit and that it constitutes a significant, and growing, portion of Ford Credit's business. The parties have stipulated that in 1993, there were over half a million active Red Carpet leases nationwide. By 1996, that number had grown to over 1.2 million.

It appears to the Court that there is an inherent inconsistency in the position taken by Plaintiffs. On the one hand, they argue that Ford Credit's liability

insurance covers this accident because Ford Credit owned the truck. But, on the other hand, they argue that Ford Credit is not entitled to the protection of Code of Va. § 38.2-2205 because it only "financed" the lease. If Ford Credit had only engaged in financing and, for example, took only a security interest in the vehicle, then its liability insurance would not even be a factor in this case. The reason Ford Credit's insurance is available to these plaintiffs in the first place is that Ford Credit went beyond financing. Ford Credit, by the very terms of the lease, became the owner of the vehicle and the successor lessor. There is no provision in § 38.2-2205 making any distinction between original lessors and successor lessors. Instead, the terms of the statute clearly provide that this exception to the omnibus statute applies to all policies of liability insurance which "provide insurance to a named insured in connection with the business of ... leasing ... motor vehicles." The subject policy clearly does just that. If it did not, then there would be no coverage available to these plaintiffs.

Plaintiffs further argue that the historical purpose of this statute has been to provide protection to "garage keepers" and that the only "garage keepers" mentioned in the few Virginia cases using that term have been retailers who dealt directly with the consumer. While all that may be true, it is clear that the plain terms of the statute do not limit its application to only such businesses. "When statutory language is clear and unambiguous, the plain meaning and intent of the enactment will be given to it; we take the words as written to determine their meaning." *Lee-Warren v. School Bd. of Cumberland County*, 241 Va. 442, 445 (1991). The part of the statute concerning leases was added in 1977 when the General Assembly amended the predecessor to § 38.2-2205. 1977 Va. Acts of Assembly, ch. 78. In doing so, the General Assembly placed no limitation or qualification on the nature of the business engaging in the leasing, so long as the lease was for at least six months. Conceivably, the lessor could be a "mom and pop" car dealer or a multimillion dollar conglomerate. So long as there is a lease for longer than six months and the named insured on the policy has coverage in connection with the business of leasing, and someone other than the named insured or its employees uses the vehicle, then this statutorily-mandated exception to the omnibus law applies. While the plaintiffs may be correct that it was not the intent of the legislature when it created this exception to shield huge, multi-purpose corporations such as Ford Credit, that is clearly what the statute does. The Court is without authority to add words to the statute or read into it a limitation that simply is not there and which the legislature could have easily created with direct and specific terms. *See Harbor Cruises v. Commonwealth*, 217 Va. 458, 461 (1976).

## *Summary*

For the foregoing reasons, the Court sustains Plaintiffs' Motion for Summary Judgment in part and finds that Defendant Haigh is an insured under the subject liability policy by virtue of his status as a permissive user. The Court also sustains Defendants' Motion for Summary Judgment in part and finds that the amount of coverage potentially available to these plaintiffs under the subject policy is limited to $25,000 per person/$50,000 per accident.